UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES PORTER,

                  Petitioner,                    Case Number: 2:11-cv-11871

v.                                          Honorable Arthur J. Tarnow

HUGH WOLFENBARGER,

                  Respondent.

_____/

## OPINION AND ORDER DENYING PETITION
## FOR WRIT OF HABEAS CORPUS, ISSUING A
## CERTIFICATE OF APPEALABILITY, AND GRANTING AN APPLICATION
## FOR LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

### I. INTRODUCTION

This is a habeas case filed under 28 U.S.C. § 2254. Petitioner Charles Porter, a Michigan state prisoner currently incarcerated by the Michigan Department of Corrections, filed this *pro se* Habeas Petition challenging his 2008 conviction for second-degree criminal sexual conduct, following a jury trial in the Kent County Circuit Court. Petitioner was sentenced as a habitual offender, fourth offense, to ten to fifty years in prison. In his petition, he raises the following claim: whether the prosecutor used peremptory challenges for racially discriminatory reasons in violation of the United States Supreme Court's holding in *Batson v. Kentucky*, 476 U.S. 79 (1986), and the Equal Protection Clause of the Fourteenth Amendment.

For the reasons set forth below, the Court will deny the Petition. The Court will issue Petitioner a Certificate of Appealability and grant him an Application for Leave to Proceed *In Forma Pauperis* On Appeal.

## II.  BACKGROUND

### A.  Substantive Facts

Petitioner's troubles in this case arise because of a sexual assault which occurred on May 3, 2006, in Grand Rapids, Michigan.  The charges arose when the Grand Rapids Police Department received a complaint from A.T.,[1] that Petitioner had sexually assaulted her.  Petitioner denied the assault and said that he had consensual sex with A.T. and her friend.  In 2006, he was tried and convicted for this offense but the Michigan Court of Appeals reversed and remanded for a new trial on the basis that the prosecutor improperly used impeachment evidence in regard to a particular witness as substantive evidence.  The Court of Appeals concluded that "the improper use of [the witness's] statement as substantive evidence tipped the balance in favor of conviction and, therefore, warrants a new trial."  *People v. Porter*, No. 274574, 2008 WL 239610, at * 2 (Mich. Ct. App. Jan. 29, 2008) (unpublished).  Petitioner was given a new trial, and it is from that trial that Petitioner now seeks habeas relief.

Petitioner's second trial began on June 24, 2008, and concluded on June 27, 2008. During jury selection, Petitioner raised a *Batson* claim, alleging that the prosecutor used peremptory challenges against two African-American jurors in a racially discriminatory manner.

The first juror in question was asked if he knew anyone that had been sexually assaulted, to which he responded yes but that he was not sure if he believed the person. He also revealed that he had been a defendant in a civil lawsuit and was not satisfied with the resolution of the case and felt that he was not treated fairly by the court system.  The prosecutor used a peremptory challenge to dismiss him.

---

[1]Complainant's initials are used to protect her identity.

2

The second juror in question revealed she had been the victim of a mugging but that the perpetrator was never caught.  She said she had difficulty with the concept of beyond a reasonable doubt.  She also told the prosecutor that she had worked as a nurse at a juvenile facility and encountered a lot of young ladies there who said they had been molested and used that as the cause for committing criminal activities.  She felt that experience would raise doubts in her mind about things she might hear in court.  She also said her niece had been a victim of a sexual assault and had been given "the runaround" and was dissatisfied with the result.  The prosecutor also exercised a peremptory challenge to excuse this juror.

In accordance with *Batson*, the trial court then gave defense counsel an opportunity to argue that the prosecutor's explanations were merely pretext.  In regards to the first juror's past experiences with the court system, defense counsel stated that the juror's "incident was a civil matter in a civil lawsuit."  It was defense counsel's position that the juror's opinion of "not being satisfied with what happened to him in a civil matter [was] inconsequential to him sitting on a criminal jury."  Trial Tr. vol. II, 140 June 25, 2008.  Defense counsel further argued that the juror indicated that he would be able to sit as a fair and impartial juror.  Trial Tr. vol. II, 140, June 25, 2008.  Regarding the second juror, defense counsel argued that the juror indicated that she would be willing to follow the jury instructions and would be able to judge the credibility of witnesses' testimony at trial.  Trial Tr. vol. II, 140 June 25, 2008.

In response to those arguments, the trial court stated that the prosecutor was entitled to a reasonable concern that the first juror's dissatisfaction with the court system might "bleed over" to the trial and that the juror would adopt an essentially hostile attitude to his duties as a juror. Trial Tr. vol. II, 141 June 25, 2008.

3

As to the second excused juror, the trial court stated:

> I was quite fond of [her] and I sort of wished that she could have stayed on the
> jury.  She was an intelligent and engaging woman who was obviously paying
> attention and was well attuned to what was going on in the courtroom.  On the
> other hand I felt that she did have a number of issues that might even have risen to
> a level of a challenge for cause.  She did indicate that she would have a hard time
> convicting on the testimony of one witness and that this would be a concern to
> her.  She also seemed to have been concerned and I wasn't entirely sure why,
> based on her contact with the juvenile facility and the people out there.  I would
> have thought that that would have posed some problems for the defense more than
> the prosecution, although she did seem to think it would give her pause in
> accepting an allegation of sexual abuse.  It never was developed fully, but the
> implication was that she must have dealt with some people at the juvenile facility
> who had made unwarranted allegations of sexual assault. At least that's what I
> deduced from it, she didn't say it in so many words.
>
> Her case, I thought, was a borderline challengeable for cause situation and
> again I think there's more than ample basis for a peremptory challenge.

Trial Tr. vol. II, 141-42 June 25, 2008.

After the evidence was presented, the jury found Petitioner guilty as charged.  The trial

court sentenced him to the prison terms described above.

## B.  Procedural Facts

Following his sentencing, Petitioner filed a Direct Appeal with the Michigan Court of

Appeals, alleging that the prosecutor exercised her peremptory challenges in violation of *Batson*

and the Equal Protection Clause.  On December 1, 2009, the Court of Appeals affirmed his

conviction.  *Porter*, 2009 WL 4342673, at *2.

In addressing Petitioner's *Batson* claim, the Michigan Court of Appeals set forth the

relevant facts, which are presumed correct on habeas review.  *Monroe v. Smith*, 197 F.Supp.2d

753, 758 (E.D. Mich. 2001), *aff'd*. 41 F.App'x 730 (6th Cir. 2002).  The Court of Appeals stated:

> During *voir dire*, the prosecutor exercised two peremptory challenges to
> dismiss the only two black members of the jury array.  Defendant, who is also

4

black, objected and raised a *Batson* challenge, arguing that the prosecutor dismissed the two black venirepersons solely on the basis of race.  The prosecutor offered a race neutral explanation for dismissing each of the potential jurors, and the trial court found the explanations did not amount to pretext.  Consequently, it denied the defendant's *Batson* challenge.  [].

\* \* \*

In this case, we need not address whether the trial court improperly failed to apply the first *Batson* factor because the trial court did not clearly err in ultimately concluding that the prosecutor's race-neutral explanations for dismissing the jurors was not pretext.  The prosecutor explained that she dismissed one juror because of his dissatisfaction with the outcome of a civil case in which he was involved, because of his belief that he was treated unfairly, and because he indicated that he may have a negative opinion of the court system in general depending on the case.

With regard to the second juror, the prosecutor indicated that she excused the potential juror for several reasons, including 1) that juror's indication that her past experience working with juveniles at a detention center, where many of the young people made false accusations of sexual abuse, would cause her to discredit the testimony of an alleged victim of sexual assault; 2) the juror's statement that she was a good decision maker except for certain things, such as painting and interior decorating, combined with her indication that her husband would not agree she was a good decision maker; 3) the juror's assertion that she was displeased with authorities' response to alleged sexual abuse involving her niece; and 4) the juror's assertion that she would have a problem with the trial court's instruction that a conviction may be based on the testimony of a single witness.

In sum, the trial court did not err in concluding that the prosecution's proffered explanation for dismissing these jurors did not amount to pretext, and in ultimately finding that defendant failed to show purposeful discrimination.

*People v. Porter*, No. 287141, 2009 WL 4342673, at \*1 (Mich. Ct. App. Dec. 1, 2009).

The Court of Appeals reasoned that the prosecutor's reasons for dismissing the first juror

"were unrelated to the juror's race, and the prosecution had legitimate concern that this juror

may have held animosity toward the court system in general that [could] have interfered with his

duty to serve as a fair and impartial juror."  *Porter*, 2009 WL 4342673, at \*1.  As to the second

5

juror, the court held that the prosecutor's reasons for exercising a peremptory challenge were not "related to the juror's race, and they gave the prosecutor legitimate concern that the juror may have had a predisposed bias against the prosecution in this sexual assault case." *Id.* The Court of Appeals then concluded that "the trial court did not err in concluding that the prosecutor's proffered explanation for dismissing these jurors did not amount to pretext, and in ultimately finding that defendant failed to show purposeful discrimination." *Id.* at *2.

Subsequently, Petitioner filed an Application for Leave to Appeal the Court of Appeals' decision with the Michigan Supreme Court, raising a *Batson* claim. The Michigan Supreme Court denied his Application. *People v. Porter*, 486 Mich. 903, 780 N.W.2d 801 (2010).

Petitioner timely filed the pending Habeas Petition, raising the *Batson* claim raised in both state appellate courts.

### III.  STANDARD OF REVIEW

28 U.S.C. § 2254(d) bars habeas relief for claims adjudicated on the merits in state court unless the state-court adjudication runs contrary to clearly established Supreme Court law, or if it results from an unreasonable application of that law or an unreasonable determination of the facts.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal-habeas court may not "issue the

6

writ simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly.  Rather, that

application must also be unreasonable." *Id.* at 410-11.

Recently, in *Harrington v. Richter*, U.S., --- U.S. ---, 131 S.Ct. 770 (2011), the United

States Supreme Court stated: "A state court's determination that a claim lacks merit precludes

federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state

court's decision." *Harrington*, --- U.S. at ---, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*,

541 U.S. 652, 664 (2004)).

A federal habeas court must also presume the correctness of state court factual

determinations.  See 28 U.S.C. § 2254(e)(1).  Federal-habeas review is "limited to the record that

was before the state court." *Cullen v. Pinholster*, --- U.S. ---, ---, 131 S.Ct. 1388, 1398 (2011).

A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v.

Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV.  DISCUSSION

### A. *Batson* Claim

In his single habeas claim, Petitioner, an African-America, alleges that his right to equal

protection under the United States Constitution was violated when the prosecutor exercised two

peremptory challenges during voir dire to excuse the only two African-American jurors on the

venire.  Petitioner argues that the prosecutor's conduct was in violation of the Supreme Court's

holding in *Batson*, and that the trial court erred in finding that the prosecutor's proffered

explanation for exercising the peremptory challenges did not amount to pretext.

7

The Equal Protection Clause of the Fourteenth Amendment commands that "no state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  The Supreme Court has long interpreted the Equal Protection Clause as prohibiting a state from trying a defendant before a jury from which members of his race have been purposefully excluded.  *See*, e.g., *United States v. Harris*, 192 F.3d 580, 586 (6th Cir. 1999) (citing *Strauder v. West Virginia*, 100 U.S. 303, 25 L.Ed. 664 (1879)).  That principle was extended by the Supreme Court in *Batson*, which held that a prosecutor's exercise of peremptory strikes on the basis of race violates equal protection.  *Batson*, 476 U.S. at 79.

### 1.  Prima Facie Case Under *Batson*

The Supreme Court explained in *Batson* that the prohibition on racially-motivated peremptory strikes seeks to protect the rights of the litigants, the venire, and the "entire community."  *Batson*, 476 U.S. at 86-88 (stating that the "harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror . . . [by] undermin[ing] public confidence in the fairness of our system of justice"); *see also Smith v. Texas*, 311 U.S. 128, 130 (1940) ("For racial discrimination to result in the exclusion from jury service of otherwise qualified groups not only violates our Constitution and the laws enacted under it but is at war with our basic concepts of a democratic society and a representative government." (internal footnote omitted)).  The Supreme Court further explained in *Miller-El v. Dretke*, 545 U.S. 231 (2005) that "[w]hen the government's choice of jurors is tainted with racial bias, that 'overt wrong . . . casts doubt over the obligation of the parties, the jury, and indeed the court to adhere to the law throughout the trial.'"  *Miller-El*, 545 U.S. at 235 (quoting *Powers v. Ohio*, 499 U.S. 400, 412 (1991)).

8

In *Batson*, the Supreme Court "outlined a three-step process for evaluating claims that a prosecutor has used peremptory challenges in a manner violating the Equal Protection Clause." *Batson*, 476 U.S. at 96-98; *see also Hernandez v. New York*, 500 U.S. 352, 358 (1991) (citing *Batson*, 476 U.S. at 96-98 and outlining the three-step process); *Braxton v. Gansheimer*, 561 F.3d 453, 458 (6th Cir. 2009) (same). "First, the Defendant must make out a prima facie case that the prosecutor has exercised peremptory challenges on the basis of race." *Batson*, 476 U.S. at 96-97. Petitioner is required to establish the following:

> To establish such a case, the defendant must first show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant can rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that these facts and other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury . . . raises the necessary inference of purposeful discrimination.

*Id.* at 96 (internal citations omitted); *see also Johnson v. California*, 545 U.S. 162, 168 (2005) (quoting *Batson*, 476 U.S. at 94).

In this case, the Court finds that Petitioner is able to establish the prima facie case of racial discrimination during jury selection. First, Petitioner is an African American, a recognized and cognizable racial group. Second, Petitioner is allowed to rely on the fact that peremptory challenges are discriminatory in nature. The fact that the only two members of the venire that were African American were excused due to the exercise of peremptory challenges raises an inference that the peremptory challenges were used on the basis of race.

## 2.  Prosecutor's Explanations Were Facially Neutral

Second, if a defendant succeeds in making a prima facie showing that the prosecutor exercised peremptory challenges on the basis of race, "the burden shifts to the State to come forward with a neutral explanation for challenging black jurors."  *Batson*, 476 U.S. at 97.  "The prosecutor therefore must articulate a neutral explanation related to the particular case to be tried."  *Id.* at 98 (footnote omitted).  "[T]he prosecutor must give a 'clear and reasonably specific' explanation of his 'legitimate reasons' for exercising the challenges."  *Id*. at 98 n.20 (citing *Texas Dep't Of Comty. Affairs v. Burdine*, 450 U.S. 248, 258 (1981)).  "In evaluating the race neutrality of an attorney's explanation, a court must determine whether, assuming the proffered reasons for the challenges are true, the challenges violate the Equal Protection Clause as a matter of law."  *Hernandez*, 500 U.S. at 359.  "The second step of [*Batson*] does not demand an explanation that is persuasive, or even plausible."  *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995).  "At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation.  Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."  *Id.* at 768 (citing *Hernandez*, 500 U.S., at 360).

In this case, the prosecutor stated that she excused one of the jurors because she was concerned about that juror's previous experience with the court.  Specifically, the prosecutor stated that she feared that the juror's unhappiness with the outcome of a past civil matter could potentially bleed over into the current proceedings and affect how he would perform as a juror.

As to the second juror excused, the prosecutor stated that she was concerned with the juror's hesitancy to convict based upon the testimony of one person, the juror's past experiences with juveniles that falsely alleged sexual assault, her belief that her family would not consider

10

her a good decision-maker, and her displeasure with the outcome of a previous sexual-assault investigation involving her niece.

"A neutral explanation in the context of the [*Batson* analysis] means an explanation based on something other than the race of the juror. . . . Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez*, 500 U.S. at 360. Each of the explanations offered to support the prosecutor's use of peremptory challenges contains nothing that, on their face, would indicate any sort of racial bias or motive. Because there was no discriminatory intent inherent in the explanations, they are considered to be valid, and the burden shifts back to Petitioner to prove that the prosecutor's explanations were pretext for purposeful discrimination.

### 3.  Petitioner Has Failed to Show Pretext

Finally, Petitioner needs to "demonstrate that the purported explanation is merely a pretext for racial motivation." *McCurdy v. Montgomery Cnty., Ohio*, 240 F.3d 512, 521 (6th Cir. 2001) (citation omitted). "The trial court then will have the duty to determine if the defendant has established purposeful discrimination." *Batson,* 476 U.S. at 98. "Since the trial judge's findings in the context under consideration here largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference." *Id*. at 98 n.21.

> [T]he decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence will often be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies peculiarly within a trial judge's province.

*Hernandez*, 500 U.S. at 365 (internal citations omitted)

11

Recently in *Rice v. White*, 660 F.3d 242 (6th Cir. 2011), the Sixth Circuit upheld this District Court's grant of a conditional writ of habeas corpus based upon a violation of *Batson*. *See Rice v. White*, No. 2:06-CV-11610, 2010 WL 1347610 (E.D. Mich. Mar. 31, 2010) (Hood, J.). In that case, defense counsel objected to the prosecutor's use of peremptory challenges, alleging that the prosecutor had excused members of the venire on the basis of race. The trial court accepted the prosecutor's race-neutral reasons for the challenges, and overruled the objection.

Voir Dire continued after recess, and the prosecutor used three more peremptory challenges to excuse African-American members of the venire. The prosecutor then offered race-neutral explanations for the peremptory strikes. This time, however, the trial court seemed hesitant to accept the prosecutor's race-neutral explanations. Specifically, the trial court felt that the reasons offered for two of the juror's were not valid, but it was not willing to specifically declare a violation of *Batson*. The trial court stated, "I really don't want any problems with this case, especially along these lines. I'm not satisfied with the prosecutor's response as to [the] potential juror[s]. . . . But from this point on let's be very careful with jury selection." *Rice*, 2010 WL 1347610, at *25 (citing to Tr. vol. III, 95-96.)

The Sixth Circuit, in addressing the claim, held that "[i]n light of the high degree of deference given to the trial court's credibility assessment, nothing in the record suggests that the trial court clearly erred in finding purposeful discrimination in the striking of veniremembers []. We therefore conclude . . . that a *Batson* violation occurred during jury selection." *Rice*, 660 F.3d at 259.

12

In comparing this case with *Rice*, unlike the facts involved in *Rice*, there is nothing in the record in this case which would indicate that the trial court rejected the prosecutor's race-neutral explanations for her peremptory strikes.  Here, defense counsel argued that he believed that the prosecutor's explanation was insufficient to satisfy the second prong of *Batson* with regard to both jurors, but the trial court rejected the argument.  Concerning the first juror, the trial court believed that the prosecutor was entitled to a "reasonable concern" that the juror's dissatisfaction with prior judicial proceedings would cause a problem with his willingness to serve.  As to the second juror, because the trial court felt that the juror may have even actually been challenged for cause, speaks to what he witnessed in the courtroom, and his impression of the prosecution's exercise of peremptory challenges.  Those findings by the trial court are afforded great deference on habeas review.

The Court therefore concludes that Petitioner has failed to present clear and convincing evidence that would have a tendency to show that the state court's factual findings were unreasonable, or that Supreme Court precedent was applied unreasonably.  Petitioner is not entitled to habeas relief with respect to this claim.

### B.  Certificate of Appealability

Next, the Court must decide whether Petitioner is entitled to a certificate of appealability (COA).  Federal Rule of Appellate Procedure 22 provides that an Appeal may not proceed unless a COA is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings requires a district court to "issue or deny a [COA] when it enters a final order adverse to the applicant. . . .  If the court issues a certificate, the court must state the specific

issue or issues that satisfy the showing required by § 2253(c)(2)."  Rule 11, Rules Governing Section 2254 Proceedings.

A COA may issue "only if the applicant made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Courts must issue a COA that indicates which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).  To receive a COA, "a petitioner must show that reasonable jurists could debate whether (or, for that matter agree that) the petition should have been resolved in a different manner or that the issues
presented were adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell* 537 U.S. at 336 (2003) (internal quotes and citations omitted).

The Court issues a COA because reasonable jurists could debate whether the issue should have been resolved differently or whether the claim deserves encouragement to proceed further. This is especially true based on the importance of the Consitutional right involved.

### V.  CONCLUSION

For the reasons stated, the Court concludes that the Petitioner has not established that the state court made an unreasonable determination of the facts in light of the evidence presented and, therefore, he is not entitled to federal habeas relief on the claim contained in his Petition. The Petition for Writ of Habeas Corpus is DENIED.

14

Accordingly, IT IS ORDERED that the Petition for Writ of Habeas Corpus is DENIED.

IT IS FURTHER ORDERED that the Court issues Petitioner a COA.  The Court will also

GRANT Petitioner an Application for Leave to Proceed *In Forma Pauperis* On Appeal.


S/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated:  February 2, 2012

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record
on February 2, 2012, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Assistant

15